UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORMAN VAN PAMEL, *et al.*,

        Plaintiffs,

v.

TRW VEHICLE SAFETY
SYSTEMS, INC., *et al.*,

        Defendants.
_____/

Case No. 12-CV-10453

HON. GEORGE CARAM STEEH

OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO COMPEL ARBITRATION [#8]

This action arises out of a dispute over modifications to a health insurance plan between retired plaintiffs and their former employer, TRW Vehicle Safety Systems, Inc., ("TRW").  Plaintiffs allege that these modifications constitute a breach by TRW of its contractual obligations to provide them with fully-paid, lifetime healthcare benefits. Defendants, based on an arbitration provision in the agreement from which plaintiffs derive their entitlement to benefits, filed a motion to compel arbitration of the plaintiffs' claims, which has been fully briefed.  Oral argument was held on May 29, 2012.  For the reasons that follow, defendants' motion to compel arbitration is GRANTED and the case is stayed pending arbitration.

*FACTUAL BACKGROUND*

Plaintiffs, former employees of TRW, were represented by the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") throughout their employment and at the time of their retirement.  Prior to the plaintiffs' retirement, the UAW

and TRW entered into a series of collective bargaining agreements covering various conditions of the plaintiffs' employment. (Pl.'s Complaint 22). The last such agreement was dated December 1, 1993 ("CBA"). It provided for retiree healthcare benefits and set forth an employee grievance procedure that culminated in arbitration.

In 1996, defendants and the union entered into a Termination Agreement ("TA") that provided for the permanent closing of the TRW facility. This agreement discontinued the CBA, but provided for retiree healthcare benefits to continue "as though the CBA . . . remained in effect." (TA 7). It also contained a broad arbitration clause, covering "any alleged violation of the CBA, its changes and [the] Termination Agreement." (TA 9). Finally, the Termination Agreement noted that where any inconsistencies arise between it and the CBA, "the provisions of the Termination Agreement shall govern." (TA 1).

According to plaintiff's' complaint, defendants complied with the terms of the Termination Agreement until August 2010, when the plaintiffs received notice that their healthcare coverage would be changing. (Pl.'s Complaint 30). Plaintiffs contend that by effecting this change, defendants breached an obligation owed to its retirees under both the CBA and the Termination Agreement. Accordingly, plaintiffs commenced this suit, asserting a breach of contract claim under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), as well as a claim for benefits under § 502(a)(1)(B) of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). Defendants maintain that these claims are subject to mandatory arbitration under the terms of the Termination Agreement, and have moved to compel arbitration.

*ANALYSIS*

*I. Presumption of Arbitrability*

In the context of labor disputes, the Sixth Circuit "begin[s] with a presumption that national labor policy favors arbitration." United Steelworkers of America v. Cooper Tire & Rubber Co., 474 F.3d 271, 277 (6th Cir. 2007).  When there is a broad arbitration clause, "the presumption of arbitrability [is] particularly applicable, and only an express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Teamsters Local Union No. 89 v. Kroger Co., 617 F.3d 899, 905 (6th Cir. 2010) (internal citation omitted).

The plaintiffs argue that this presumption does not apply to retirees, citing UAW v. Yard-Man, Inc., 716 F.2d 1476 (6th Cir. 1983) for the proposition that retirees cannot be forced to arbitrate disputes with their former employer.  Specifically, they point to the Sixth Circuit's recognition that unlike active employees, "retirees face no restrictions whatsoever in seeking fulfillment of contractual benefits directly from their former employer." Yard-Man, 716 F.2d at 1484-85.

However, this misrepresents the court's holding. Yard-Man addressed "whether retirees may . . . settle their contractual disputes . . . directly with their former employer . . . [and if] such direct settlements . . . [are] precluded once the union undertakes the legal representation of the retirees in . . . litigation." Id. at 1484.  The Sixth Circuit held that individual retirees could not be restricted by *their union* from pursuing individual claims against their former employer.  It did not hold, as plaintiffs suggest, that retirees are exempt from the need to pursue contractual remedies set out in an agreement from which they seek benefits.  In fact, since Yard-Man, the Sixth Circuit has explicitly held that "the

presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits . . . and if there is nothing in the agreement that specifically excludes the dispute from arbitration." Cleveland Elec. Illuminating Co. v. Util. Workers Union, Local 270, 440 F.3d 809, 816 (6th Cir. 2006).

Plaintiffs mistakenly cite Cleveland Electric to maintain that retirees cannot be compelled into arbitration. However, this distinguishable case involved a union attempting to compel the arbitration of retirees' claims without their consent. The Cleveland Electric court held that the union could not compel retirees to arbitrate claims that they had no individual interest in pursuing. It in no way held that retirees were exempt from a contractual requirement to arbitrate when bringing a claim on their own.

To the contrary, the Sixth Circuit has never found retirees to be exempt from the need to arbitrate claims when they seek to obtain benefits from an agreement containing an arbitration provision. "[A]rbitration is a creature of contract, and parties should, absent the most extenuating and explicit of circumstances, be required to arbitrate those disputes which they agree to arbitrate." Ferro Corp. v. Garrison Indus., Inc., 142 F.3d 926, 939 (6th Cir. 1998). This is why "nearly every court to consider the issue has relied on the presumption in favor of arbitrability in finding that disputes regarding retiree benefits are generally subject to arbitration so long as the collective bargaining agreements in question include terms regarding retiree health benefits." Kop-Flex Emerson Power Transmission Corp. v. Int'l Ass'n of Mechanics & Aerospace Workers, No. 11-0120, 2012 U.S. Dist. LEXIS 1520, at *16-17 (D. Md. Jan. 6, 2012). This court has maintained that the presumption of arbitrability applies to disputes over retirees' benefits in the past, and

continues to do so here. See UAW v. Kelsey-Hayes Co., No. 11-14434, 2012 U.S. Dist. LEXIS 82099 (E.D. Mich. June 13, 2012).

*II. Retirees' Benefits Derive From the Termination Agreement*

The Termination Agreement expressly discontinued the CBA when "the plant close[d] . . . or no . . . work or employee remain[ed]," while also providing for the continuance of retiree healthcare benefits "as though the CBA . . . remained in effect." (TA 1, 7). Plaintiffs' claim to benefits thus derives not from the CBA, which no longer exists, but from the Termination Agreement that continued those benefits. They even cite the Termination Agreement in their complaint to support their entitlement to healthcare benefits. (Pl.'s Complaint 25).

Plaintiffs instead argue that their right to healthcare benefits derives from the earlier CBA, and that this right became vested and unalterable at the time they retired. Citing Yard-Man, they note that "it is unlikely that such benefits . . . would be left to the contingencies of future negotiations." Yard-Man, 716 F.2d at 1482. However, the Sixth Circuit has since clarified that it "never inferred an intent to vest benefits in the absence of . . . explicit contractual language. . . [and that] the Court should apply ordinary principles of contract interpretation" in making such a determination. Yolton v. El Paso Tennessee Pipeline Co., 435 F.3d 571, 579-80 (6th Cir. 2006).

The CBA in question has no language indicating an intent to vest benefits. Because ordinary contract interpretation leads to the conclusion that these benefits were not vested, plaintiffs can only rely upon the CBA to the extent that it was not later abrogated by the Termination Agreement.

-5-

*III. Retirees Are Bound to the Termination Agreement*

Plaintiffs, citing <u>United Steelworkers of America v. Cooper Tire & Rubber Co.</u>, 474 F.3d 271 (6th Cir. 2007), argue that they are not bound to the Termination Agreement's arbitration clause because they did not expressly consent to it.  However, this was not the holding of <u>Cooper Tire</u>, in which the union sued the former employer to compel arbitration on behalf of retirees as a class.  <u>Id.</u> at 276.  Rather, the Sixth Circuit was protecting individual retirees from having unwanted claims brought on their behalf when it held that the union could arbitrate only on behalf of those retirees who consented to its representation.  Whether individual retirees were bound to a contractually agreed upon arbitration provision in individual litigation was not at issue in <u>Cooper Tire</u>.

No Sixth Circuit precedent exempts retirees from arbitration when it is mandated by a contractual agreement, much less an agreement that the retirees themselves seek to enforce.  While <u>Cooper Tire</u> maintains that a union needs individual retirees' consent to arbitrate on their behalf, retirees are not exempt from arbitration provisions found in contracts from which they derive benefits simply because of their status as retirees.

Alternatively, plaintiffs contend that they are not bound to the Termination Agreement because they were not parties to it.  However, the Sixth Circuit has recognized that a retiree who pursues a claim for benefits conferred under an employment agreement is properly viewed as a third-party beneficiary.  <u>See</u> <u>Yard-Man</u>, 716 F.2d at 1486.  It is well established that "third-party beneficiaries generally have no greater rights in a contract than does the promisee."  <u>United Steelworkers v. Rawson</u>, 495 U.S. 362, 375 (1990). Accordingly, this court has held that third-party beneficiaries are bound by an arbitration clause in a contract giving rise to their claims.  <u>See</u> <u>Detroit Edison Co. v. Burlington</u>

Northern & Santa Fe Ry. Co., 442 F. Supp. 2d 387, 392-93 (E.D. Mich. 2006); see also Kelsey-Hayes Co., 2012 U.S. Dist. LEXIS 82099, at *6.

The Sixth Circuit has also held that "a nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a *direct* benefit from the contract while disavowing the arbitration provision." Javitch v. First Union Sec., Inc., 315 F.3d 619, 629 (6th Cir. 2003). Here, plaintiffs seek a direct benefit from the Termination Agreement while simultaneously disavowing its obligation to arbitrate disputes concerning its interpretation and application. Because this court could not properly rely on a clause in the Termination Agreement guaranteeing benefits and ignore another clause that mandates arbitration, the defendants' motion to compel arbitration must be granted.

*IV. Plaintiffs' Claims Are Subject to Mandatory Arbitration*

Because plaintiffs are bound to the Termination Agreement from which their claim to healthcare benefits derives, the terms of that agreement determine whether arbitration is required. That agreement instructs that wherever there is an inconsistency between it and the CBA, "the terms of the Termination Agreement shall govern." (TA 1).

Such an inconsistency arises between the two agreements' arbitration provisions. The CBA's provision addressed only employees, not retirees. If it contained the governing provision, the plaintiffs might not be required to arbitrate. See, e.g., Rosseto v. Pabst Brewing Co., 128 F.3d 538 (7th Cir. 1997) (holding that a CBA's arbitration provision providing for arbitration of "all grievances . . . between the Company and its employees" was insufficient to establish that the company agreed to arbitrate disputes over retiree medical benefits). However, the Termination Agreement's provision explicitly pertains to "retirees and employees" and covers "all alleged violations" of the interpretation and

application of the Agreement. (TA 1, 9). As a result of this inconsistency, the broader arbitration clause contained in the Termination Agreement is the governing provision.

Faced with such a broad arbitration clause, "only an express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Kroger Co., 617 F.3d at 905 (internal citation omitted). Here, there is no evidence that a dispute over retiree healthcare benefits was meant to be excluded from mandatory arbitration. This explicit contractual language encompassing the plaintiffs' claims, coupled with the general presumption of arbitrability, necessitates granting defendants' motion to compel arbitration.

*V. LMRA & ERISA Claims Stayed Pending Arbitration*

Finally, plaintiffs maintain that they are independently entitled to bring litigation under ERISA and LMRA. They again cite Yard-Man, in which the court found that "each retiree has an undisputable and effective remedy against the employer for breach of contract under § 301(a) [of LMRA]." Yard-Man, 716 F.2d at 1485. However, Yard-Man addressed whether a union could prevent individual retirees from directly settling their claims with their former employer, not whether mandatory arbitration clauses are enforceable in the broader context of all retiree healthcare disputes. Plaintiffs do indeed have an independent right to bring ERISA or LMRA claims against their employers. However, where these claims would be predicated entirely upon the defendants' alleged breach of a negotiated agreement, this remedy can be superseded by a contractual provision in that agreement requiring arbitration. See Kelsey-Hayes Co., 2012 U.S. Dist. LEXIS 82099, at *8.

Plaintiffs rely primarily upon a footnote from Yard-Man stating that "the exclusivity of contractual grievance arbitration remedies does not exist in the context of retirees who,

without restraint, may litigate their disputes with their former employers directly under §301 [of LMRA]." Yard-Man, 716 F.2d at 1486. However, this quote is misleading because it omits that the court expressly withheld from deciding this issue. In fact, Supreme Court precedent suggests the opposite conclusion, stating that "federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as a mode of redress." Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965) (emphasis in original). Further, even if one concludes that the ERISA and LMRA claims are not subject to arbitration, "a court should stay litigation on non-arbitrable claims where a decision in one forum could affect the resolution of claims in the other." Gordon v. Royal Palm Real Estate Investment Fund, No. 09-11770, 2011 U.S. Dist. LEXIS 22911, at *24-25 (E.D. Mich. March 8, 2011) (internal citation omitted).

*Conclusion*

Because the Termination Agreement discontinued the CBA while providing for the continuance of plaintiffs' healthcare benefits, disputes concerning those benefits are properly viewed as arising out of the Termination Agreement. To the extent that plaintiffs claim a right to benefits provided by that agreement, they are bound to it either as third-party beneficiaries or by estoppel, including its provision requiring that all disputes be arbitrated. When the court determines that a cause of action is covered by an arbitration clause, Section 3 of the Federal Arbitration Act ("FAA") provides that the court may "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3; see also Fazio v. Lehman Bros., Inc., 340 F.3d 386, 392 (6th Cir. 2003). Accordingly, for the reasons set out above, the defendants' motion to compel arbitration is GRANTED and the case is stayed

pending arbitration.

    SO ORDERED.

Dated:  August 1, 2012

                                              s/George Caram Steeh
                                              GEORGE CARAM STEEH
                                              UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 1, 2012, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk